## Commonwealth *v.* Orsino, Appellant.

Argued December 14, 1961.  Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*Mary Alice Duffy,* with her *Duffy and Duffy,* for appellant.

*Arlen Specter,* Assistant District Attorney, with him *Louis F. McCabe,* Assistant District Attorney;

*Paul M. Chalfin,* First Assistant District Attorney, and *James C. Crumlish, Jr.,* District Attorney, for Commonwealth, appellee.

OPINION BY RHODES, P. J., March 21, 1962:

This is an appeal by John Orsino from the order of the Court of Oyer and Terminer and General Jail Delivery and the Court of Quarter Sessions of Philadelphia County dismissing his petition for writ of error coram nobis and remanding him to the Eastern State Penitentiary.[1]

On July 28, 1958, appellant pleaded guilty to fourteen bills of indictment charging, inter alia, rape of a thirteen-year-old girl, corrupting the morals of a minor, indecent assault, armed robbery, assault and battery with intent to murder, commission of a crime of violence while armed with a firearm, operating an automobile without consent of the owner, and conspiracy. The rape was committed on September 1, 1953. The robberies took place on February 5 and 8, 1958, and May 8, 1958. Appellant, with an accomplice, forced drivers of three different trucks making coin collections to lie on the floor while the trucks were driven to prearranged destinations. The trucks involved were used in making collections; one from cigarette vending machines, and two from coin receptacles in public telephone booths. Cigarettes and money totaling $1,800 were taken from the vending machine company truck and $3,000 from one telephone company truck. Three detectives, who were notified by radio, joined in pursuit of the telephone company truck in the robbery of May 8, 1958. One detective pursued appellant who had abandoned the truck. Shots were exchanged; the de-

---

[1] Now State Correctional Institution at Philadelphia. See Act of October 22, 1959, P. L. 1356, 71 PS §§62, 301. See, also, Act of July 29, 1953, P. L. 1435, as amended by the Act of April 17, 1959, P. L. 48, 61 PS §911 et seq.

tective was struck on the right thigh and left hand; appellant received two superficial wounds, and a third shot resulted in complete severance of his spinal cord.

On September 9, 1958, appellant, then thirty-one years of age, was brought before the court for sentence; he was lying on a stretcher. His prior record included two sentences to the Pennsylvania Industrial School at Camp Hill for robbery and burglary, respectively. Exhaustive pre-sentence investigation was made by the probation officer of the court of quarter sessions. The medical report from the Philadelphia General Hospital where appellant was confined showed that appellant was unable to move his trunk and lower extremities as the result of a transection of the spinal cord causing complete and permanent paralysis below the level of the injury. With physical therapy and nursing care it was believed he would be able to get about on a wheel chair. Dr. John Shearer, Director of the Eastern Diagnostic and Classification Center of the Eastern State Penitentiary stated that that institution would be able to handle such a case, but it was preferable that appellant be admitted to a veterans' hospital. A letter from the authorities of the Philadelphia office of the Veterans Administration Hospital indicated appellant would be eligible for special care there if he were placed on probation and sentence suspended. Accordingly, the sentence was suspended and appellant placed on probation for thirty years. It was ordered that he remain in the Philadelphia General Hospital pending possible transfer to a Veterans Administration Hospital.

On November 24, 1959, a hearing was held in appellant's presence, as a result of which his probation was revoked and he was sentenced to imprisonment in the Eastern State Penitentiary for terms totaling not less than twelve years nor more than thirty-six years. At this hearing appellant's wife testified that he became more demanding on her visits to him at the Philadel-

phia General Hospital; that she told him she wanted a divorce; and that, in the course of an argument in August, 1959, he hit her with a stick, threw a cigarette in her face, and punched her in the mouth, although he was lying on his stomach on a stretcher at the time. Dr. Albert A. Martucci of the Philadelphia General Hospital testified that appellant was then paralyzed from the waist down, including paralysis of the bladder and rectal functions; that his upper extremities had improved so that he could get about on crutches if he had braces or splints to support his legs. Dr. Martucci also stated that appellant had become less cooperative, visited forbidden areas in the hospital, and used foul language before the nurses, as a result of which his discharge from the hospital had been requested. A psychiatric report showed no neurotic or psychotic reaction or condition. Appellant in testifying denied striking his wife or causing trouble in the hospital, although he admitted going into off-limit areas. A letter from the Veterans Administration Hospital at West Roxbury, Massachusetts, disclosed a final determination that appellant was not eligible for admission and treatment in a veterans' hospital at that time. Appellant remained in the Eastern State Penitentiary. On February 20, 1961, he was readmitted to the Philadelphia General Hospital with a fracture of the right femur. The fracture eventually healed and appellant was returned to prison on May 17, 1961.

On June 27, 1961, appellant's attorney filed a petition for writ of error coram nobis in the Court of Oyer and Terminer and General Jail Delivery and the Court of Quarter Sessions of Philadelphia County. In the petition it was alleged that appellant's wife gave false testimony against him at the hearing on November 24, 1959, at which his probation was revoked and sentence imposed; that his wife gave birth to two children, one on May 9, 1960, and the other on April 20, 1961, listing

her brother-in-law as the father in both cases; that appellant did not violate his probation; and that his confinement at Eastern State Penitentiary constituted cruel and barbarous treatment; and prayed that he be given an opportunity to present evidence to supplement the record, and sought his discharge from prison. The district attorney filed an answer to appellant's petition.

On June 27, 1961, the court ordered that a writ of error coram nobis issue and that a hearing be held to supplement the record and inform the conscience of the court. The hearing on appellant's petition for writ of error coram nobis was held before President Judge FRANCIS SHUNK BROWN, JR., on July 11, 1961. Appellant's sister testified to facts showing that appellant's wife and her brother-in-law lived together at the time a child was born to the wife on May 9, 1960. Contradicting the wife's testimony of November 24, 1959, appellant's brother testified that appellant did not strike his wife on the hospital visit in August, 1959. Appellant's mother also testified she was present and saw no evidence that he struck his wife in August, 1959. Appellant stated he was unaware that his wife was pregnant when she testified against him on November 24, 1959. An assistant district attorney, who represented the Commonwealth at all the hearings involving appellant, stated he was unaware of the wife's pregnancy on November 24, 1959, and admitted that this fact, if true, would in all probability affect the credibility of the wife and her motives in testifying on November 24, 1959, to violent conduct by her husband in the hospital. A probation officer testified appellant's wife readily admitted that the father of the child born on May 9, 1960, was her brother-in-law, Thomas Sylvester, and that she was seeking a divorce from appellant.

Dr. Martucci testified that, following the healing of the leg fracture and appellant's discharge from the

Philadelphia General Hospital on May 17, 1961, exercises were prescribed; that with braces his legs will become weight bearing, but not mobile; that amputation might be necessary and that this would enable appellant to get around easier. Appellant testified that there is no equipment in prison for the exercises prescribed for him; that if he were fitted with braces he would be able to stand on crutches; and that there are no facilities in the Eastern State Penitentiary for taking care of him. A prisoner at the Eastern State Penitentiary who worked in the hospital stated he took care of appellant, and that he was in bad shape with no one to look after him.

At the conclusion of the hearing on July 11, 1961, the writ was refused and appellant remanded to the Eastern State Penitentiary. In so doing, President Judge BROWN stated: "It is apparent that no matters of fact were brought before the court at the hearing on the petition for the writ which, if known at the time sentence was imposed, would have prevented such judgment. While the testimony at this hearing about John Orsino's striking his wife and her motives for charging him with violation of probation may seriously affect the credibility of her testimony against him, there was other evidence presented at the earlier hearing when he was sentenced to justify the revocation of his probation and the imposition of sentence. Thus, the writ of coram nobis was not applicable to the facts of this case.

"Furthermore, when sentence was suspended and defendant John Orsino was placed on probation, it was ordered that he remain in the Philadelphia General Hospital pending his transfer to a Veterans Administration Hospital. The latter part of the order contemplated that he was not to be released from custody until he was removed and actually admitted to a hospital of the Veterans Administration. Indeed, this might well be regarded as a condition of his probation, for,

as above mentioned, if the opportunity for his care and treatment at such a hospital had not been presented to the court, he would have been sentenced to prison for a long term, and not placed on probation. It follows that when the court was informed that he would not be accepted by any hospital of the Veterans Administration, the revocation of his probation and the imposition of sentence were warranted.

"Therefore, defendant John Orsino was not discharged from prison but remanded to the Eastern State Penitentiary."

The appeal to this Court was taken on August 25, 1961.

The order of the court must be affirmed. Initially, the present appeal might well be quashed because of a serious violation of Rule 34 of this Court relating to appellant's statement of the questions involved on appeal. Cf. *Epstein v. Epstein,* 93 Pa. Superior Ct. 398; *Creachen v. Bromley Brothers Carpet Company,* 214 Pa. 15, 17, 63 A. 195. Rule 34 reads as follows: "The statement of the questions involved must state the question or questions in the briefest and most general terms, without names, dates, amounts or particulars of any kind. It should not ordinarily exceed fifteen lines, must never exceed one page, and must always be printed on the first page of the Brief, without any other matter appearing thereon. This rule is to be considered in the highest degree mandatory, admitting of no exception; ordinarily no point will be considered which is not set forth in the statement of questions involved or suggested thereby." Appellant's statement of questions involved covers three pages and violates Rule 34 in other important respects.

The purpose of the writ of error coram nobis is to correct errors of fact only, and its function " 'is to bring before the court rendering the judgment matters of fact which, if known at the time the judgment was

rendered, would have prevented its rendition': Commonwealth v. Harris, 351 Pa. 325 [327], 41 A. 2d 688 [690]." *Com. ex rel. Hough v. Maroney,* 402 Pa. 371, 375, 167 A. 2d 303, 305. Under the writ of error coram nobis a judgment can be set aside for material errors of fact, but not of law, affecting its validity and unknown to the court when it was rendered. *Com. v. Richardson,* 172 Pa. Superior Ct. 354, 357, 94 A. 2d 85. See *Com. v. Perry,* 196 Pa. Superior Ct. 598, 176 A. 2d 175. Moreover, it has been held that neither coram nobis nor habeas corpus may be used as a substitute for an appeal or as a motion for a new trial. *Com. v. Taylor,* 193 Pa. Superior Ct. 360, 363, 165 A. 2d 390. See *Com. ex rel. Sampson v. Banmiller,* 406 Pa. 147, 176 A. 2d 430. It may be that the petition of appellant for writ of error coram nobis could have been denied without a hearing because the facts alleged, even if true, would not have changed the result. In fact, the court relied on evidence other than that of appellant's wife in revoking his probation, and, in any event, the questions of the credibility and the competency of the wife are not properly reviewable by coram nobis. *Com. ex rel. Helwig v. Maroney,* 194 Pa. Superior Ct. 16, 167 A. 2d 326; *Com. ex rel. Firmstone v. Myers,* 184 Pa. Superior Ct. 1, 3, 132 A. 2d 707, certiorari denied 355 U. S. 962, 78 S. Ct. 550, 2 L. Ed. 2d 537.

However, a hearing was held on the petition, and it was properly ruled that appellant was not entitled to the relief prayed for. Appellant's brief argumentatively refuses to accept this ruling as a fact.

The sentencing of a defendant is a matter committed to the sound discretion of the trial judge. *Com. ex rel. Lockhart v. Myers,* 193 Pa. Superior Ct. 531, 165 A. 2d 400. The court in sentencing may receive any relevant information which will enable it to exercise its discretion in determining the proper sentence or penalty. Subject to the limitations prescribed by statute the

matter is within the discretion of the court. *Com. v. Fitzgerald,* 101 Pa. Superior Ct. 308, 309; *Com. v. Carelli,* 90 Pa. Superior Ct. 416, 418. A proceeding held to determine sentence is not a trial, and the court is not bound by the restrictive rules of evidence properly applicable to trials. *Com. ex rel. Hendrickson v. Myers,* 393 Pa. 224, 229, 144 A. 2d 367; *Com. v. Petrillo,* 340 Pa. 33, 47, 16 A. 2d 50.

In this case, instead of merely sentencing appellant to prison and prison hospitalization, the court placed him on probation in order that he might receive the benefit of the best possible medical care so as to enhance his chances of at least partial recovery. Later, when it developed that appellant was not entitled to care in a Veterans Administration Hospital, and when there was evidence that appellant's conduct was such as to constitute a violation of his probation, it was permissible for the court to revoke his probation and impose a sentence. See *Com. v. Meyer,* 169 Pa. Superior Ct. 40, 82 A. 2d 298. We think the court exercised its discretion fairly to both society and appellant.

Whether we treat appellant's petition as one seeking coram nobis or habeas corpus, no error is shown in the action of the court in any of the proceedings comprising appellant's pleas of guilty, probation, and sentence, and, after hearing thereon, refusing appellant's petition for writ of error coram nobis.

The order is affirmed.